**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JOHNNY JORDAN, JR.,

    Plaintiff,

vs.                                              CASE NO. 3:07-cv-500-J-TEM

MICHAEL J. ASTRUE
Commissioner of Social Security,

    Defendant.

_____

**ORDER AND OPINION**

This matter is before the Court on Plaintiff's Complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration (the Commissioner) denying his claim for disability insurance benefits (DIB). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated November 30, 2007 (Doc. #17). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #16, P's Brief). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #18, D's Brief). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in its making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the decision is **AFFIRMED.**

**PROCEDURAL HISTORY**

In the instant action, Plaintiff filed an application for a period of disability and disability insurance benefits on March 11, 2004 (Tr. 74). Plaintiff alleged a disability onset date of August 29, 2003 (Tr. 74). After being denied initially and upon reconsideration (Tr. 32-33, 34-35), Plaintiff requested a hearing, which was held on November 9, 2005 in Jacksonville, Florida before Administrative Law Judge (ALJ) John D. Thompson, Jr. (Tr. 510-75). Plaintiff appeared and testified at the hearing, as did vocational expert (VE) Melissa Howell (Ms. Howell). A supplemental hearing was held on May 25, 2006 where Plaintiff and Ms. Howell, again, appeared and testified (Tr. 489-509).[1] Plaintiff was represented by non-attorney Mr. Gil Spruance during the underlying administrative phase of this case. On May 25, 2006, ALJ Thompson issued a hearing decision denying Plaintiff's claim (Tr. 20-31). The Appeals Council (AC) denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (Tr. 8-11).

Mr. L. Jack Gibney, Jr., Esq., now represents Plaintiff in this case. The instant action was filed in federal court on June 8, 2007 (Doc. #1, Complaint). The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings.

**SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ'S DECISION
AND THE STANDARD OF REVIEW**

Plaintiff is entitled to disability benefits when he is unable to engage in substantial

---

[1]As discussed in more detail *infra*, the Court notes the ALJ heard testimony from the VE, but ultimately based his decision at Step 5 on the rules set forth under the GRIDS, rather than the vocational testimony.

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  20 C.F.R. § 404.1505.[2]  The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 404.1520; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 127, 146 n.5 (1987).

The ALJ's decision dated May 25, 2006 denied Plaintiff's claim (Tr. 20-31).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date (Tr. 25).  At step two, the ALJ found Plaintiff's severe impairment was his "history of degenerative joint disease of the cervical spine at C4/C7" (Tr. 25).  At step three, the ALJ found this impairment did not meet or equal any of the impairments listed in Appendix 1, Subpart P of the Regulation No. 4 (Tr. 28).  The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform "a reduced range of light work with no repetitive bending (stooping)" (Tr. 28).  At step four, the ALJ determined that Plaintiff could not do any past relevant work (Tr. 29).  Although, the ALJ elicited testimony from a VE regarding other work Plaintiff could perform in the national economy, he found it unnecessary to weigh such evidence because reliance on the GRIDS, in this case, was applicable at step five (Tr. 30).  The ALJ determined Plaintiff was not disabled within the meaning of the Social Security Act after considering Plaintiff's RFC (Tr. 30-31).

---

[2] All references to 20 C.F.R. shall be to the 2007 edition, unless otherwise noted.

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of facts are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (2006). Substantial evidence is more than a scintilla - i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court has not re-weighed the evidence, but has determined whether the record, as a whole, contains sufficient evidence to permit

a reasonable mind to conclude that the Plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

## REVIEW OF FACTS AND ANALYSIS

Plaintiff, born October 22, 1957 (Tr. 74), is a fifty-one year old male who completed high school with special education classes, but did not receive a diploma or certificate (Tr. 105, 513-14).[3] Plaintiff was involved in a motor vehicle accident on August 29, 2003 and has not worked since that date (Tr. 99, 166-71, 183).[4] Plaintiff has past relevant work as a logging tractor operator (Tr. 119). Plaintiff claims he is unable to work because of neck, left leg and lower back pain (Tr. 99). Plaintiff's medical history is set forth in detail in the ALJ's decision and will be summarized here only as pertinent to the issues on appeal.

Dr. Robert Dehgan, M.D., treated Plaintiff for his back pain from September 4, 2003 to November 14, 2003 (Tr. 172-187).[5] Initial x-rays of Plaintiff's lumbar spine showed no gross abnormalities (Tr. 186). An MRI of Plaintiff's cervical spine on October 14, 2003 showed minimal protrusions and minimal mass effect upon the anterior thecal sac, while the MRI of Plaintiff's lumbar spine the same day was normal (Tr. 176-77). Dr. Dehgan

---

[3] The Court takes note of the discrepancy between Plaintiff's testimony that he attended special education classes (Tr. 513-14) and the information Plaintiff provided the Social Security Administration for completion of the Disability Report-Adult on March 11, 2004 (Tr. 108-18). The Social Security interviewer recorded Plaintiff's response that he did not attend special education classes in high school (Tr. 114).

[4] It is unclear in the record whether Plaintiff was driving his personal car, or was in a company truck, when the accident occurred (Tr. 521-27, 319, 337).

[5] The ALJ refers to Dr. Dehgan as a physiatrist (Tr. 29). A physiatrist is a physician who specializes in physical medicine, which is the study and treatment of disease mainly by mechanical and other physical methods. *Stedman's Medical Dictionary*, 931, 1197 (25th ed. 1990). Dr. Dehgan's letterhead indicates he is board certified in the areas of physical medicine and rehabilitation, electrodiagnostic medicine, and spine and sports medicine.

released Plaintiff to light duty work on October 31, 2003, with restrictions of no repetitive bending or lifting over 20 pounds (Tr. 174). Dr. Dehgan's last impression of Plaintiff was that Plaintiff's condition consisted of lumbar strain, myofascial pain, degenerative discs at C4-5 and C5-6, that the neurological examination was normal and Plaintiff should continue with his medications, home exercise, and hot and cold packs (Tr. 172-73, follow-up visit on November 14, 2003).

Subsequently, Plaintiff began treatment with Dr. Bao Pham, M.D., on January 22, 2004 (Tr. 319-20). Dr. Pham diagnosed Plaintiff with acute myofascial strain, spondylosis and degenerative disc disease of the cervical and lumbar spine, and facet arthropathy.(Tr. 320). Dr. Pham also noted to rule out cervical and lumbar radiculopathy, herniated nucleus pulposis (Tr. 320). On August 6, 2004, Dr. Pham placed Plaintiff at maximum medical improvement (MMI) with a 4% whole person permanent partial impairment (Tr. 397-98).

Plaintiff raises three issues on appeal. First, Plaintiff claims the Commissioner failed to satisfy his "burden of showing the presence of other jobs that the plaintiff could perform in substantial numbers" (P's Brief at 6). Second, Plaintiff alleges the ALJ failed to properly consider all evidence prior to making a decision (P's Brief at 12). Three, Plaintiff asserts the ALJ was biased in making his decision (P's Brief at 14).

Defendant argues the ALJ considered all the evidence of record, properly relied on the Medical Vocational Guidelines (the GRIDS)[6] in reaching his decision, and did not exhibit

---

[6] The GRIDS are a series of rules which use a matrix of a claimant's RFC for sedentary, light, medium or heavy work and the claimant's vocational profile of his age, education and past relevant work, to direct a conclusion on the issue of whether the claimant is capable of substantial gainful activity in the national economy. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00-204.00; *Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983).

any bias or prejudice in determining Plaintiff's non-disability status (*see* D's Brief, generally).

**The Commissioner's Burden at Step Five**

Once the claimant has established he has a severe impairment which prevents him from performing his past relevant work, the burden at step five shifts to the Social Security Administration to establish the claimant is capable of engaging in any other work in the national economy, considering his age, education and work experience. 20 C.F.R. § 404.1520(g); *Sryock v. Heckler*, 764 F.2d 834, 835-36 (11th Cir. 1985).

In order to ascertain whether the Commissioner met his burden at step five, the Court must determine whether the ALJ in this case properly made a finding of not disabled based on direct application of the GRIDS, in lieu of relying on vocational testimony. Typically, an ALJ may either apply the GRIDS or use the testimony of a vocational expert to determine whether the claimant is able to adjust to other work in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004).  However, the ALJ may not exclusively rely on the GRIDS either when the claimant is unable to perform a full range of work at a given work capacity level or when the claimant has non-exertional impairments that significantly limit basic work skills.  *Id.* at 1242.

Exertional limitations affect a claimant's ability to meet the seven strength demands of jobs: sitting, standing, walking, lifting, carrying, pushing, and pulling.  20 C.F.R. § 404.1569a (b); *Phillips*, 357 F.3d at 1242, n.11.  In this case, the ALJ determined that Plaintiff was restricted to performing light work, relying in part on the assessment of Dr. Dehgan, one of Plaintiff's treating physicians.  Dr. Dehgan stated in his treatment notes that Plaintiff "was able to return to light duty work status with no repetitive bending or lifting over

20 pounds" (Tr. 26, 174).  Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  Plaintiff does not challenge the assessed RFC.  As discussed more below, review of the record reveals substantial evidence supports the RFC.  Accordingly, the ALJ properly determined Plaintiff did not have any additional exertional impairments that would prevent him from engaging in a full range of employment at the light work level (Tr. 30).

Generally speaking the Commissioner defines non-exertional limitations as those limitations that do not limit exertion per se, but nevertheless result in job related limitations.  Social Security Ruling 96-9p states that a non-exertional limitation is an impairment caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling.  SSR 96-9p, 1996 WL 374185 at *5 (S.S.A. 1996).  "In the disability programs, a nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental restriction.  Nonexertional impairments may or may not significantly narrow the range of work a person can do."  SSR 83-14, 1983 WL 31254 at *1 (S.S.A. 1983) (emphasis added).  In this circuit, pain is definitely considered a non-exertional impairment.  *Foote v. Chater*, 67 F.3d at 1559.

Eleventh Circuit case law strongly suggests a preference for use of a vocational expert where non-exertional impairments limit a claimant's ability to work.  However, in this instance, the ALJ specifically did not find Plaintiff's non-exertional limitations limited his ability to work.  Here, the ALJ discredited Plaintiff's claims of disabling pain and concluded that the Plaintiff's only non-exertional limitation was an inability to perform repetitive stooping (Tr. 30).  Here again, the ALJ relied in part of the medical opinion of Dr. Dehgan

8

in assessing Plaintiff's restrictions from work-related activity (Tr. 30). The question thus becomes, did the ALJ properly discredit Plaintiff's testimony concerning the disabling nature of his asserted pain.

Under *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995), if proof of disability is based upon subjective evidence and a credibility determination is critical to the decision, the ALJ must articulate adequate reasons for rejecting allegations of pain. "[T]he ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562.

Here, the ALJ did not totally reject Plaintiff's pain testimony, but determined that Plaintiff's statements concerning the intensity, duration and limiting effects his pain were "not entirely credible" (Tr. 29). The record supports the ALJ's finding that the degree of pain was not disabling when considered in the light of all of the evidence. As noted in *Landry v. Heckler*, 782 F.2d at 1553, whether objective medical impairments could reasonably give rise to the alleged pain is a question of fact for the Commissioner, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." In *Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989), the Eleventh Circuit found that where the administrative law judge has specifically articulated at least three reasons for rejecting the claimant's subjective complaints of pain, he properly discredited the claimant's testimony. In this case, the ALJ found Plaintiff's testimony about his level of pain was not entirely credible for several reasons. Among the cited reasons are: (1) the clinical evidence, specifically the MRI's of Plaintiff's spine, did not support Plaintiff's assertions (Tr. 26); (2) Dr. Dehgan, a treating physician of Plaintiff's, released Plaintiff to light duty work in October 2003 (Tr. 26); (3) Dr. Dehgan also noted Plaintiff's apparent

hypersensitivity and overreaction to palpitation of the spine, which the ALJ found was indicative of symptom magnification (Tr. 26); and, (4) even Dr. Pham, who completed a Physical Capacities Evaluation form that specifies limitations which would preclude most work, found a maximum medical improvement rating of Plaintiff at only 4% permanent partial impairment of the whole person (Tr. 27-28).[7] Thus, ALJ Thompson's finding of Plaintiff's credibility was well within the *Allen* parameters.

The GRIDS are inapplicable only when the non-exertional limitations are severe enough to prevent a wide range of employment at the work level restriction imposed by the exertional limitations. *Sryock*, 764 F.2d at 836. In the instant case, the ALJ determined that Plaintiff's non-exertional limitation of an inability to perform repetitive stooping did not prohibit a wide range of employment opportunities in light work (Tr. 30). The Court finds there is substantial evidence supporting the ALJ's conclusion that "this claimant can do a relatively full range of light work as his only limitation according to his treating physiatrist, Dr. Dehgan, was an inability to perform repetitive stooping" (Tr. 30).

Social Security Ruling 85-15 provides "if a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." SSR 85-15, 1985 WL 56857 at *7 (S.S.A. 1985). In *Veasey v. Astrue*, No. 1:06-CV-1909-AJB, 2008 WL 504388 (N.D. Ga. Feb. 21, 2008), the court held that "a limited ability to stoop or bend would not significantly affect Plaintiff's ability to perform light work and, therefore, . . . does not undermine the ALJ's conclusion that he did

---

[7]The Court also takes note that when Dr. Pham completed the evaluation form, he marked that his patient was able to perform sedentary work activities on a regular and continuing basis (i.e. 8 hours per day, 5 days per week or an equivalent work schedule) (Tr. 488).

10


not suffer any nonexertional impairments, such as would erode the light occupational base." *Id.* at *13.  On the facts of the instant action, the ALJ's reliance on the GRIDS to direct a determination of non-disability was proper.

Having determined the ALJ did not need to rely on VE testimony, it is unnecessary for the Court to address Plaintiff's allegation that the ALJ failed to satisfy the burden of establishing other jobs Plaintiff could perform in significant numbers.  The GRIDS themselves stand as substantial evidence of jobs existing in significant numbers in the national economy.  *Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983)

**Plaintiff's Allegations of the ALJ's Failure to Consider Evidence and Bias**

Plaintiff alleges the ALJ failed to fully consider all the evidence because the ALJ issued his decision the same day the supplemental hearing was held (P's brief at 13).  Additionally, Plaintiff sets forth the proposition that the ALJ was biased against him, also because the decision was issued the same day as the supplemental hearing (P's brief at 14).  As Plaintiff's third argument is a corollary to his second argument, the Court will address these issues together.

An ALJ shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision.  20 C.F.R. § 404.940.  The ALJ's impartiality is necessary to maintain the integrity of the system.  *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996).  Therefore, the ALJ must carefully weigh the evidence, giving individualized consideration to each claim that comes before him.  *Id.*  However, there is a presumption that judicial and quasi-judicial officers are unbiased.  *Schweiker v. McClure*, 456 U.S. 188, 195 (1982).  The burden of rebutting this presumption is on the party alleging the bias by showing a conflict of interest or some other specific reason for

disqualification. *Id.* at 195-96. In the instant case, Plaintiff has failed to satisfy this burden.

Here, there is no evidence of the alleged bias during either hearing or in the ALJ's decision. Plaintiff's sole basis for his allegation of bias rests on the seeming rapidness with which the ALJ made his decision (P's brief, 15). Plaintiff correctly notes the ALJ's decision was issued the same day the supplemental hearing was held (P's brief, 12). However, in an apparent abundance of caution, the ALJ elicited testimony from a vocational expert and even held a supplemental hearing for the sole purpose of allowing Plaintiff's representative to further question the VE (Tr. 491). Indeed, the ALJ ensured Plaintiff's due process rights were not violated by allowing Plaintiff's representative the opportunity to further cross-examine the VE at the supplemental hearing. *See Demenech v. Sec'y of the Dept. of Health and Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990). The testimony taken during the supplemental hearing only related to hypothetical questions posed to the VE regarding other work in the national economy (Tr. 489-509).

In his decision, the ALJ explicitly stated the VE's testimony was unnecessary because reliance on the GRIDS was applicable (Tr. 30). As this Court has determined the ALJ's reliance on the GRIDS was proper, there was no need for the ALJ to weigh the VE's testimony in making his decision. The ALJ had adequate time to fully weigh and consider all the evidence. More than seven months passed between the initial hearing on November 9, 2005 and the supplemental hearing on May 25, 2006. Although it was heard and given consideration (*see* Tr. 23, 29-30), the testimony from the supplemental hearing was shown to be unnecessary to the ALJ's decision. Plaintiff's allegation of bias is without merit.

**Harmless Error Analysis**

As an ancillary matter, although Plaintiff does not raise the issue, the Court's

12

independent review of the record as a whole, as required under *Bloodsworth*, 703 F.2d at 1239, reveals the ALJ has misconstrued or misread the record evidence on two points when making his findings of fact. First, the ALJ stated that Plaintiff could read a newspaper (Tr. 28). The record indicates Plaintiff testified he could not read a newspaper (*see* Tr. 515). Second, the ALJ noted physical therapy records from Dr. Pham's office "show only a moderate level of pain (4-5/10)" (Tr. 29). The record reflects the treatment notes from the physical therapist at Dr. Pham's office show Plaintiff had a higher level of pain from January 22, 2004 to March 11, 2004, which then fell to a moderate level beginning on March 18, 2004 through June 17, 2005 (Tr. 288-318, 351-447). In this case, the Court finds the ALJ's misstatements of the record to be harmless error.

Various courts, including this one, have addressed harmless error with their findings. In *Diorio v. Heckler*, 721 F.2d 726 (11th Cir. 1983), the court found harmless error when the ALJ made erroneous statements of fact, but applied the proper legal standard when considering the vocational factors in application of the GRIDS. *Id*. at 728. In *Wright v. Barnhart*, 153 Fed.Appx. 678 (11th Cir. 2005), the court noted though although the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and normally failure to do so is reversible error, such failure was harmless error when correct application of the Regulations would not contradict the ALJ's ultimate findings. *Id*. at 684.[8] This Court found harmless error when the ALJ failed to discuss a treating physician's opinion, but even giving controlling weight to the opinion would not have changed the outcome. *Parton v. Astrue*, No. 3:07-cv-63-J-TEM, 2008 WL 897094 (M.D.

---

[8]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

Fla. Mar. 31, 2008).

In *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989), the court found no principle of administrative law or common sense requires remand in quest of a perfect opinion unless there is reason to believe the remand might lead to a different result.  In *Ward v. Commissioner of Social Security*, 211 F.3d 652, 656 (1st Cir. 2000), the court held that while an error of law by the ALJ may necessitate a remand, a remand is not essential if it will amount to no more than an empty exercise.

Here, remand for the cited misstatements would not change the outcome of the case and, thus, would be an empty exercise.  For instance, even if the ALJ correctly noted Plaintiff could not read a newspaper, application of the GRIDS would still be proper and would still result in a finding of not disabled.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.16.  Similarly, there is substantial evidence in the record to support the weight the ALJ gave Dr. Pham's medical opinion (Tr. 29).  The ALJ discounted Dr. Pham's medical opinion because Dr. Pham did not perform any diagnostic testing, his assessment of Plaintiff's condition was contrary to the test results of the prior MRIs performed under Dr. Dehgan's care, and the overall objective evidence did not support Dr. Pham's medical conclusion that Plaintiff was totally disabled  (Tr. 29).

## CONCLUSION

For the foregoing reasons, the undersigned finds the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence.  The Commissioner's decision is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this Order and Opinion and, thereafter, to close the file.  Each party shall

bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this <u>6th</u> day of August, 2008.

Copies to all counsel of record
and *pro se* parties, if any

_____
**THOMAS E. MORRIS**
United States Magistrate Judge